ALONZO E. SCOTT v. J. FRANK HILL, ANNA LAURA HILL, and J. L. BISHOP, Appellants.—50 S. W. (2d) 110.

Division One, May 27, 1932.

*Irwin & Bushman* for appellants.

492

*Embry & Embry* for respondent.

FRANK, J.—Appellants J. Frank Hill and Anna Laura Hill are husband and wife. Appellant J. L. Bishop is the father-in-law of J. Frank Hill. Prior to September 4, 1924, J. L. Bishop was the owner of certain real estate which he sold and conveyed to J. Frank Hill and Anna Laura Hill on September 4, 1924, for a consideration of $4,500. Hill and wife borrowed $3,250 of the purchase price from respondent Scott, executed to him their promissory note for that amount and secured the payment of same by a first deed of trust on the land. Bishop took a note secured by a second deed of trust on the land for $1,250, the balance of the purchase price. Both deeds of trust were recorded on September 4, 1924, the one securing Scott's $3,250 note being filed for record first. It later developed that Hill and his wife were unable to pay the $3,250 note to Scott or keep up the interest thereon, so on August 4, 1928, pursuant to an agreement to that effect Hill and his wife deeded the land to Scott in consideration of which Scott cancelled the $3,250 note and released the deed of trust securing it. Thereafter and about October 1, 1928, Scott discovered that Bishop held a second deed of trust on the land for $1250. He then brought this suit in which he asks that the lien of his first deed of trust be reinstated—that is, he asked judgment for the amount due on his $3,250 note; that same be adjudged a first lien on the land and that said lien be foreclosed.

The decree below was for plaintiff and awarded him the relief prayed for in his petition. Defendants appealed.

The pleadings are not challenged. They sufficiently present the issues.

Appellants' first contention is that at the time respondent released his deed of trust he had knowledge of the existence of the second deed of trust and for that reason he is not entitled to a reinstatement of the lien. In this connection it is claimed (1) that the record of the second deed of trust charged respondent with constructive knowledge thereof, and (2) that the weight of the evidence showed that he had actual knowledge thereof.

In this character of a case, it cannot be said as a matter of law that respondent knew of the existence of the second deed of trust because it appeared of record, and for that reason had no right to rely on representations as to encumbrances. Where fraudulent representations in respect to the title to land or encumbrance thereon are of such a character as to induce a reasonably prudent person to rely thereon and refrain from an examination of the record, the party aggrieved by such representations is entitled to relief. This

question was decided in the case of Clark v. Edgar, 84 Mo. 106, 111. We there said:

"Nor can it be announced as a correct proposition of law, that because an examination of the records would have disclosed the true state of the property, as respects this prior incumbrance, he had no right to rely upon these alleged representations. The fact that this information was at hand and could have been ascertained by an inspection of the records is entitled to its weight, in determining whether the representations were such as would impose upon one of ordinary prudence, but it does not constitute a full answer to the charges made in the petition. Fraudulent representations in respect to title to land will entitle the injured party to relief. [Holland v. Anderson, 38 Mo. 55; Langdon v. Green, 49 Mo. 363; Bailey v. Smock,, 61 Mo. 213.] But the misrepresentation must be as to something material, unknown to the injured party, relied upon by him, and such as to induce him to refrain from an examination of the records, when accessible."

We have held that where a vendor represents to the vendee that the title to land is good and the land is free from encumbrances, and the vendee relies on such representations and by reason thereof is induced not to examine the records, he is entitled to relief from the consequences of such representations. In Bailey v. Smock, 61 Mo. 213, 217, we said:

"In reference to the first instruction for the plaintiff, the principle is unquestionably established that fraudulent representations in respect to the title of land, will entitle the aggrieved party to relief; but the misrepresentations must be concerning something unknown to the party injured, who has been induced to act or abstain from examination from some special confidence reposed in the other party, as in this case, where the vendor prevents the vendee from making an examination of the records in regard to the title *by assurances that the title is perfectly good and the property is free from encumbrances, and upon the faith of such assurances and representations the vendee abstains from making the proper examination.*" (Italics ours.)

It is true that if respondent had examined the records before he accepted a deed to the property and released his deed of trust, he would have discovered that Bishop held a second deed of trust on the property, but his failure to examine the record does not preclude his right to have the release of the deed of trust set aside and his lien reinstated, if the representations made to him by Hill were such as would have induced a reasonably prudent person in his situation to rely thereon and refrain from an examination of the record. We must, therefore, examine the evidence for the purpose of determining (1) what representations were made to Scott and

whether or not they were calculated to cause him to rely thereon and abstain from an examination of the record, and (2) whether or not the weight of the evidence would warrant a finding that Scott had actual knowledge of the existence of the second deed of trust.

 Respondent testified that at the time he accepted a deed to the property, in consideration of which he cancelled his $3250 note and released of record the first deed of trust securing it, he did not know that Bishop held a second deed of trust on the property. He further testified that Hill told him there was no encumbrance on the property except his (respondent's) deed of trust, and that he took him at his word. In addition to these verbal representations, the deed by which Hill and his wife conveyed the property to respondent represented and warranted that the land conveyed by the deed was free and clear of any and all encumbrances done or suffered by the grantors or those under whom they claimed.

Scott and wife, Bishop and wife and J. Frank Hill and his wife all met at the Farmers and Traders Bank, at California, Missouri, on September 4, 1924, for the purpose of executing the deeds in connection with the transaction in question. Bishop and his wife executed a warranty deed conveying the land to J. Frank Hill and wife. The Hills then executed two deeds of trust on the property, a first to secure the payment of Scott's $3,250 note, and a second to secure the payment of Bishop's $1,250 note. Bishop and his wife and Hill and his wife all testified that Scott was present at the bank when both deeds of trust were executed. Hill testified that Kuhn who prepared the two deeds of trust said, "this is Lon's and this is yours Lev," meaning that one deed of trust belonged to Scott and the other to Bishop. Scott denied any knowledge of the second deed of trust. He testified that he lived twelve miles from town, was in a hurry to get started home and left the bank as soon as his deed of trust was executed. Scott is corroborated in the latter statement by the banker who prepared both deeds of trust. The banker testified that he prepared the second deed of trust after Scott left the bank.

Hill further testified that during the time he was negotiating with Scott for the loan, Scott told him that he would loan him $3,000 if his father-in-law, Bishop, would furnish the balance of the purchase price; that Scott finally agreed to loan him $3,250; that when he got behind with his interest Scott asked him to give a mortgage on his crop to secure it; that he refused to give the mortgage and told Scott it would be unfair to his father-in-law who held a second mortgage on the farm. Hill further testified that during the negotiations looking to his deeding the farm to Scott in consideration of the cancellation of the $3,250 note, he asked Scott what effect his deeding the farm to him would have on his father-in-law's second mortgage; that Scott said to him, "That knocks it out."

Bishop and his wife further testified that a few days before Scott took title to the property and released the first deed of trust, he came to their home and tried to induce Bishop to take up the first deed of trust; that when Bishop refused to do so, Scott then asked him to cancel his second deed of trust which he refused to do. Scott denied talking with either Bishop and his wife or Hill about the second deed of trust. He testified that he did not learn of the second deed of trust until October following the release of the first deed of trust in August, 1928.

There was evidence that Hill and his wife were insolvent and unable to pay any part of either the first or second deed of trust. While there was no evidence as to the reasonable market value of the land, Scott testified without objection that he would rather have the amount of his deed of trust in money than to have the land; that he offered to take "a good knock off" if Hill would raise the money and pay him; that Hill "claimed the place wasn't worth near it and wouldn't do nothing."

After hearing the evidence, the chancellor found, among other things, that at the time Scott accepted a deed to the land from Hill and cancelled the $3,250 note and released the deed of trust, Hill knew and Scott did not know of the existence of the second deed of trust; that Hill not only concealed that fact from Scott, but in the deed by which he and his wife conveyed the land to Scott they represented and warranted that the land was free and clear of all encumbrances done or suffered by them or those under whom they claimed.

Appellants contend that the weight of the evidence did not warrant such a finding and asks us to review the evidence and make a contrary finding.

■ While it is our duty to pass upon the weight of the evidence in equity cases on appeal, yet, where the issues must be determined on conflicting verbal testimony, we will defer somewhat to the cancellor's findings of fact because of his better opportunity to judge of the credibility of such testimony. [Reaves v. Pierce, 26 S. W. (2d) 611, 616.] In the instant case, the testimony as to Scott's knowledge of the existence of the second deed of trust is conflicting. According to appellants' evidence respondent was present at the bank when both deeds of trust were executed. It also appears from appellants' evidence that on different occasions both Hill and Bishop talked with respondent about the second deed of trust. Respondent testified that he was not present at the bank when the second deed of trust was drawn, and in this he is corroborated by the evidence of the banker who testified that he prepared the second deed of trust after Scott left the bank. Respondent also denied having a conversation with either Hill or Bishop about the second deed of trust: In ad-

dition to this conflict in the testimony, respondent testified that before he accepted a deed to the property from Hill, he asked Hill if he was in a position to give a clear warranty deed to the property; that Hill told him there was no encumbrance on the property except the first mortgage and he could give him a clear deed and he took him at his word. In addition to the verbal representations which respondent claims Hill made to him, Hill and his wife conveyed the property to respondent by a warranty deed in which they represented and warranted to respondent that the land was free and clear of any and all encumbrances done or suffered by them or those under whom they claimed.

Human experience teaches us that ordinarily men do not knowingly act against their own interest. It is hard to believe that respondent would have voluntarily released his first lien, knowing at the time there was a second lien on the property. Viewing the evidence as a whole and according to the chancellor's finding of facts the deference due it in view of the conflicting evidence, we are not convinced that the chancellor's finding that respondent did not know of the existence of the second deed of trust at the time he released the first, is against the weight of the evidence.

This brings us to the question of the legal effect of Hill's conveyance of the land to respondent. The general rule is that where property is conveyed by a mortgagor to the mortgagee, the equitable title becomes merged in the legal and the lien of the mortgagee is extinguished. 'Ordinarily this general rule does not apply where, as in this case, there are two mortgages on the property. We have so held in numerous cases. Speaking to that question in Seiberling, Miller & Co. v. Tipton, 113 Mo. 373, 377, 21 S. W. 4, we said:

"The claim of the plaintiffs that the quitclaim deed from Jester to the wife of Jewart operated as a satisfaction of the prior deed of trust held by Jewart cannot be sustained. Treat this quitclaim deed as having been made to Jewart himself instead of his wife, still there was no merger of the legal and equitable titles. While the general rule is that where the legal and equitable estates come to one person in the same right, the equitable merges in the legal estate; still that rule does not apply where there are two mortgages, and the prior mortgagee acquires a conveyance from the mortgagor or his grantee. In such cases the intervening outstanding junior mortgagee will prevent a merger, if it be to the interest of the first mortgagee to keep the estates separate, and that is the case here. [Collins v. Stocking, 98 Mo. 290.]"

See also, Wilson v. Vanstone, 112 Mo. 315, 20 S. W. 612; Williams v. Brownlee, 101 Mo. 309, 13 S. W. 1049; Collins v. Stocking, 98 Mo. 290, 11 S. W. 750; Hayden v. Lauffenburger, 157 Mo. 88, 96, 57 S. W. 721.

■ It is clear from the authorities above cited that where there are two mortgages, the conveyance of the property by the mortgagor to the person holding the first mortgage, does not work a merger of the equitable and legal title and thereby extinguish the lien of the first mortgage where such a result would be against the interest of the first mortgage. In the instant case, there is nothing in the record tending to show that it would be for the interest of respondent for the conveyance of the land to him by the mortgagor, to work a merger of the legal and equitable title and extinguish the lien of his first mortgage, thereby causing the second mortgage to become a first lien on the property. On the contrary the record shows that such a result would be against his interest.

It does not appear in either of the cases above cited that the holder of the first mortgage released his mortgage of record after acquiring the title to the property. For this reason it might be said that these cases are not authority as to the legal effect of an actual release of the first mortgage. However, they are authority for the proposition that where there are two mortgages, the conveyance of the property by the mortgagor to the first mortgagee does not necessarily extinguish the lien of the first mortgage. In the instant case, after Hill, the mortgagor, conveyed the property to respondent, the first mortgagee, the first mortgage was actually released of record. This brings us to the question of the legal effect of this release.

■ The intent with which the release was made and not the making of the release is the thing which governs, and that intent should be determined by the interest of respondent, the holder of the first deed of trust. We say this because Bishop, the holder of the second deed of trust did not acquire such deed of trust, or part with anything of value, or change his position in any manner whatsoever relying upon the fact that the first deed of trust had been released. The first deed of trust appeared of record at the time Bishop acquired the second. He knew at the time he took the second deed of trust that his security was the equity in the land over and above the first deed of trust. He cannot be harmed by the restoration of the lien of the first deed of trust. In event of such restoration he would then have exactly the same security he had at the time he acquired his second deed of trust. Equity will not permit him to reap where he has not sown. If he had been harmed by the release, or if some third party, relying upon the release, had acted to his prejudice, a different question would be presented. The weight of authority is in line with this conclusion. In the note to Pugh v. Sample, 39 L. R. A. (N. S.), the annotator, at page 839, says:

"By the weight of authority, a discharge by the mortgagee of his lien and the surrender of the evidence thereof to the mortgagor, in consideration of a conveyance of the interests of the latter to the

former, does not operate as an extinguishment of the lien as against junior or intermediate encumbrances, and the senior lien still retains its priority. Different theories to sustain this doctrine are advanced by the cases, but with few exceptions they all reach this result.''

The law as stated by the annotator is supported by the weight of authority as shown by the cases cited in the note.

▆ Two 'further contentions are made, (1) that respondent released the first deed of trust believing that his acquisition of the title extinguished the lien of the second deed of trust, a mistake of law from which equity will not grant relief, (2) the mistake being made by respondent alone, it was not a mutual mistake and for that reason equity will not grant relief.

The rules contended for properly apply to a case where parties are dealing with each other, but they have no application to the facts of this case. Here, Bishop the holder of the second deed of trust, was not a party to the transaction. He was not induced to act and took no action of any kind because of a mistake of either law or fact made by respondent. Not being a party to the transaction, the inducing cause of the making of the release is no concern of his unless he was injured thereby. In event of the restoration of the lien of the first deed of trust he would be in exactly the same position he was before the release was made. For that reason he has no claim which a court of equity should recognize.

The decree below should be affirmed. It is so ordered. All concur.