SALINE COUNTY and R. L. HYATT, JAMES M. PARKS and C. B. DAVIS, Judges of the County Court of Saline County, v. RICHARD J. THORP, E. L. PARSONS, Trustee, GEORGE H. ALTHOUSE and JACOB WISE, Appellants.—88 S. W. (2d) 183.

Division One, November 12, 1935.

*T. H. Harvey* and *North T. Gentry* for appellants.

1142

*Owen C. Rawlings* for respondents; *James & James* of counsel.

HYDE, C.—This is an action in equity brought by Saline County (in which the members of the county court joined as plaintiffs) to cancel a quitclaim deed to Saline County, to set aside the entry of satisfaction of two county school fund mortgages, to set aside the cancellation of the bonds secured thereby, and to restore lien of said mortgages. Defendants' pleading was denominated a demurrer, and

sought the dismissal of plaintiffs' bill on the ground that it did not state sufficient facts to show that plaintiffs were entitled to the relief prayed for. This was overruled by the court and, upon defendants' refusal to plead further, a decree was entered granting the relief asked by plaintiffs. Defendants have appealed from this decree.

The following facts are stated in the petition. On the 24th day of February, 1919, the county loaned defendant Thorp four thousand dollars of public school fund money. Thorp executed his bond to the county therefor and secured same by a mortgage on 120 acres of land in Saline County, which was on the same day filed for record. On the 4th day of January, 1926, the county made a further loan to defendant Thorp of three thousand dollars of public school money, for which he executed his bond to the county therefor and secured same by a mortgage on the same land, which was on the same day filed for record. On the 4th day of January, 1926, defendant Thorp executed a note for one thousand dollars to defendant Althouse, and secured same by a deed of trust, whereby the same land was conveyed to defendant Parsons, as trustee, which was on the 29th day of March, 1930, filed for record. Thorp failed to pay interest on the four thousand dollar note in 1927 and failed to pay interest on the three thousand dollar note in 1930. The county informed defendant Thorp that foreclosure would be had unless the past due interest was paid. Thorp then offered to execute and deliver a deed conveying all of his right, title and interest in said real estate to the county in consideration of the premises. On the 15th day of March, 1933, Thorp did execute and deliver a quitclaim deed, conveying all his interest in said real estate to plaintiff county, which was on that day filed for record. At the time said conveyance was made, the county court believed that said real estate was free of all liens and incumbrances except the two mortgages to the county, and that said deed was accepted by them under that belief. A marginal release on the record of each mortgage in the recorder's office was thereupon entered by the county clerk, showing satisfaction of said mortgages; and at said time the bond for four thousand dollars and the bond for three thousand dollars were presented to the recorder of deeds of said county, and by her stamped canceled. At that time, the deed of trust executed by Thorp to Parsons trustee, to secure said one thousand dollar note, was an unsatisfied lien on said real estate, of which fact plaintiffs were ignorant.

It was also stated that if plaintiffs had known that said deed of trust was a lien upon said real estate, plaintiff would not have accepted said deed from Thorp, nor would plaintiffs have caused the marginal entry of satisfaction of said two mortgages to have been entered on the record; that the county court is prohibited by statute from investing any school funds on encumbered real estate security; and that the county court had no authority to accept a deed from

Thorp in satisfaction of said indebtedness, while said real estate was encumbered. There was a further allegation that defendant Althouse had assigned and transferred said one thousand dollar note to defendant Wise.

Appellants point out that no fraud, on the part of defendants or any of them, was alleged; that the petition shows no mutual mistake of fact; that the $1000 trust deed was a matter of record; that the members of the county court could only fail to discover it because of gross negligence; and say that equity will grant no one relief, from the consequences of his own neglect, due to failure to avail himself of means of knowledge at hand. Perhaps, if this was a case between individuals, the allegations of this petition would not show clearly enough the right to equitable relief. [See Scott v. Hill, 330 Mo. 490, 50 S. W. (2d) 110.] Even between individuals, there are circumstances where there may be a duty to make disclosure of certain facts, so that silence, when there is a duty to speak, may even amount to fraud (see 12 R. C. L. 307, sec. 68), or at least it may prevent one, who has gained an advantage thereby, to which in good conscience he is not entitled, for which he has given nothing, and because of which he has in nowise changed his position, to profit at the expense of one who acted under mistake as to material facts, even though that mistake be unilateral. [See Frederich v. Union Electric Light & Power Co., 336 Mo. 1038, 82 S. W. (2d) 79.] In that case we said: "One cannot, of course, have rescission merely because he finds that, in the light of changed conditions, he made a bad deal. [See Krueger v. Licklider (Mo.) 76 S. W. (2d) 113.] . . . Reformation, and ordinarily rescission or cancellation, is only granted where there is a mutual mistake. However, there are exceptions made to these general rules in cases where the mistake of one party is either known to the other party or is so obvious, under the circumstances, that it must have been known to him, and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition."

It appears here (although it is not so clearly stated as it could have been) that the proposition of the court was to release the bonds and mortgages for a conveyance of the land with no other encumbrances. We could hardly conceive of reasonable men making a proposition to take 120 acres farm land in satisfaction of a first lien of this size subject to other encumbrances, and we do not think that this petition is susceptible of such an interpretation. Thorp had actual knowledge of the other encumbrance (since he made it) and the county court did not. If the county court agreed to accept clear title to the land in satisfaction of the school fund mortgages, Thorp could not be entitled to a release without conveying the land free from that encumbrance. In view of the decline in value of farm

lands, since the county loaned this money (which is not alleged but which has been a matter of such public concern that no court could fail to take knowledge of it), it is not reasonable to suppose that Thorp would not so understand the court's proposition. Thorp, therefore, never complied with the court's offer, never became entitled to a release, and having obtained it without being entitled to it has no standing to prevent setting it aside. What standing has the holder of the subsequent encumbrance to prevent it, upon the facts here stated, when to grant this relief to the county would still leave him with just what he had and all that he is entitled to have? It would only prevent him from making profit, at the expense of the public school fund, because of mistake of public officers from which he lost nothing. It is well settled that equity will not declare a merger under such circumstances so as to give the holder of an intervening encumbrance a greater lien and priority than he had. [Scott v. Hill, 330 Mo. 490, 50 S. W. (2d) 110, and cases cited; Blanford v. Graff (Mo. App.), 50 S. W. (2d) 739.]

■ Appellants further say that it is not alleged that the land is worth less than the amount of all three mortgages and delinquent interest, but, if it does not directly state it, we think that inference is a reasonable inference from the facts stated. Appellants also say that there is no allegation that Thorp was insolvent. Such an allegation would not be necessary here for, if he was solvent, the court certainly would have no authority to release him from his obligation to the county to repay what he borrowed from the school funds. It must be remembered that this is a case where public officers were acting for a governmental subdivision of the state, a county, in relation to funds held in trust for the public for school purposes. Nothing is better settled that that, under such circumstances, such officers are not acting as they would as individuals with their own property but as special trustees with every limited authority, and that everyone dealing with them must take notice of those limitations. [Montgomery County v. Auchley, 103 Mo. 492, 15 S. W. 626.]

■ Sections 9243-56, Revised Statutes 1929, say what a county court can do with reference to the investment, collection and reinvestment of public school funds. These statutes require that county courts "diligently collect, preserve and securely invest . . . on unincumbered real estate security, worth at all times at least double the sum loaned . . . the county school fund;" and that these funds "shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund, the income of which fund shall be collected annually and faithfully appropriated for establishing and maintaining free public schools." [Sec. 9243.] It is also provided by this section that the county court "may, in its discretion require personal security in addition thereto." The county treasurer is required to collect all school money, give receipts therefor,

and file duplicate receipts with the county clerk. The county clerk is authorized to satisfy a school fund mortgage "when the amount of said receipts is in full of all interest and principal of said bond and mortgage." [Sec. 9246.] School fund loans are required "to be secured by a mortgage in fee on real estate within the county, free from all liens and encumbrances, of the value of double the amount of the loan, with a bond," and also with additional personal security if deemed necessary. [Sec. 9251.] The mortgage is required to recite the bond and contain a condition for sale by the sheriff upon 20 days' notice. [Sec. 9252.] Even after a loan has been made, the county court is given power to require additional security on the bond "when they in their judgment deem it necessary for the better preservation of the fund," and to enforce payment of the principal if it is not given. [Sec. 9253.] Provision for sale by the sheriff, on order of the court, is made by Section 9254, and authority for the county to purchase and manage mortgaged land is given by Section 9256.

The purpose of requiring a bond and personal security is, of course, to make it possible to collect the debt even if the land, securing the loan, decreases in value. The county court has no authority to give any right of the county to collect either principal or interest due (Veal v. County Court, 15 Mo. 412), or to dispense with either the bond, with its personal obligation to repay the money, or the mortgage conveying clear land as security. [Lafayette County v. Hixon, 65 Mo. 581.] Neither does it have authority to release a surety from his liability upn the bond or to take in payment of the amount due or any part thereof, upon a school fund bond and mortgage, a note which does not conform to the statutory requirements. [Montgomery County v. Auchley, 103 Mo. 492, 15 S. W. 626.] Why should it have any authority to release one who borrowed from this fund from his obligation to repay it? Equity will even act in advance by injunction to prevent the illegal application of public money by public officers; why should it not act to prevent the loss of a sacred trust fund, under the circumstances here? If a county court could release the obligation to repay school fund loans, at its own whim or pleasure, for any chips and whetstones, the intent of the statute to safeguard the public school funds by requiring double security of unencumbered land, in every loan, would be nullified. School funds could be rapidly dissipated by excessive loans, from the payment of which the persons who obtained the funds, or agreed to be security for them, would be released by accepting conveyances of land worth less than the amount loaned. Certainly this would result if such releases were made in consideration of the conveyance of land subject to other encumbrances. The county court should not be permitted to accomplish by indirection something which it is prohibited from doing directly. Why should

not the burden of upholding such a transaction fall upon him who claims to have gained rights against the public by it? An individual may do things with his own that no trustee will be permitted to do with his trust fund if the beneficiary of that trust fund will suffer loss thereby. ■ At least, we are convinced that, under the facts stated in this case, a court of equity was justified in declaring this whole transaction void as against the county and restoring the county to its full rights, since it was not shown or even claimed that anyone changed position or suffered loss by reason of the county court's inadvertent action. Since the public may be estopped from asserting its legal rights by acts or neglect of its officers (State ex rel. City of Sikeston v. Public Service Comm. of Mo., 336 Mo. 985, 82 S. W. (2d) 105, and cases cited; State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394), to leave the record in its present condition might ultimately allow a situation to be created from which an estoppel would arise, and it was the duty of the county court to act promptly to correct it.

The decree is affirmed. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.