PETER C. BREIT, EXECUTOR, ETC., RESPONDENT, v. M. T. BOWLAND, ET AL., DEFENDANT; W. Z. JOHNSON ET AL., APPELLANTS.—100 S. W. (2d) 599.

Kansas City Court of Appeals. December 7, 1936.

434

*Booher & Woolverton* for respondent.

*Charles F. Johnson* and *Robert E. Rooney* for appellants.

SPERRY, C.—This is a suit in equity by respondent, executor of one Bielman, seeking a decree declaring a deed of trust bearing date of March 19, 1925, is prior to one filed of record December 13, 1921, and owned by W. Z. Johnson. From a decree establishing priority of the Bielman deed of trust, Johnson has appealed.

The evidence offered disclosed that—

On December 31, 1919, Bielman, who died sometime prior to the institution of this suit and who is represented herein by respondent, his executor, loaned Bowland $4208.73, evidenced by two notes, one for $608.73, due March 1, 1920, and the other for $3600, due December 31, 1924. The interest rate was seven percent and they were secured by deed of trust on an undivided four-fifths interest in forty-seven acres of well-improved land in Andrew County. There was some evidence that the loan was used as part of the purchase price of an

undivided three-fifths interest in the above-mentioned farm, Bowland then owning an undivided one-fifth interest therein. Bowland was a single man at that time but married thereafter.

On December 13, 1921, Bowland executed note and deed of trust in the sum of $1500 to W. Z. Johnson, appellant herein, stating in the deed of trust that it was subject to a first deed of trust securing $4208.73. Both deeds of trust were duly filed of record.

On March 23, 1925, Bowland and his wife executed a new note and deed of trust, bearing date of March 19, 1925, in the sum of $4200, bearing interest at six percent and due five years from date, payable to Bielman, and also gave Bielman his personal note for $8.73, plus accrued interest on the loan. Bielman then released the first-mentioned deed of trust on the margin of the record, as follows:

"The debt mentioned in the within Deed of Trust having been fully paid and discharged, I hereby acknowledge satisfaction in full and release the property herein conveyed from the lien and incumbrance thereon, this 23rd day of March, 1925.

                                        "Joseph Bielman,
                                              "Beneficiary.

"Attest: J. Harry Latham,
      "Recorder of Deeds."

And the following entry was made thereon by the recorder:

"The notes described herein were produced, properly assigned and cancelled by Recorder of Deeds this 23rd day of March, 1925.

                                        "J. Harry Latham,
                                        "Recorder of Deeds."

Bielman had personal knowledge of the Johnson loan at this time.

On this same day Bielman recorded the last-described deed of trust. Respondent testified that appellant claimed to him, some time afterward, that his, appellant's, lien would now be a first lien and that respondent replied that he did not think so. Both appellant and his son denied that this conversation took place.

The undisputed evidence is that no step was taken by Bielman during his lifetime to assert a prior lien, although he knew of the Johnson deed of trust, and his attorney, respondent herein, testified he knew appellant claimed the first lien. There was evidence to the effect that Johnson, in December, 1925, tried to sell his note to Bielman. The record does not disclose the date of Bielman's death but this action was not instituted until March 22, 1932, some seven years after Bielman's first loan was released of record, and then only after Johnson had foreclosed his deed of trust. The further undisputed evidence is that the land covered by the various deeds of trust was worth in excess of $8000 in 1921, and about $6000 in 1925, when Bielman's last deed of trust was recorded, and not more than $2100 when this suit was instituted and when tried. If appellant prevails he will recover without loss; if respondent wins, appellant's investment will

be a complete loss, although both might have had full satisfaction in 1925.

This being an equity case we are not bound by the findings of the trial court unless such findings are supported by the evidence and the law, although deference will be paid to his findings unless they are against the weight of the evidence. But the trial court made no findings of fact of record in this case. Here the material facts are virtually all evidence by records introduced or are undisputed. It is heard *de novo* on the merits in this court. [Snow v. Funck, 41 S. W. (2d) (Mo. Sup.), 2, l. c. 5.]

The rights of the parties under their respective deeds of trust are legally fixed and unless equity will do that which cannot be done at law the priorities must remain so fixed. [Vance v. Corrigan, 78 Mo. 94, l. c. 95-96; Harrison Machine Works v. Bowers, 200 Mo. 219, l. c. 231-232; Rehm v. Alber et al., 272 Mo. 452, l. c. 462-463; Givens v. Burton, 183 S. W. (Mo. Sup.) 617, l. c. 622.] Indeed, respondent so recognizes the law, else the present suit would not have been instituted.

No fraud, deceit, or even lack of full knowledge of all the facts upon the part of Bielman prior to release of his first mortgage is pleaded, proved or even claimed by respondent. He made the release, thus getting himself into this position, with his eyes open and with full knowledge of the Johnson lien. His then attorney, respondent here, also had full knowledge, if not at the time, then within a few months thereafter. If Bielman knew all facts but was mistaken as to the legal effect of the full release he entered of record, then it was a mistake of law and not of fact. Equity affords no relief because of mistakes purely of law. [Norton v. Highleyman, 88 Mo. 621, l. c. 624; State Savings Trust Co. v. Spencer, 201 S. W. 967, l. c. 971; Utermehle v. Norment, 197 U. S. 40, l. c. 56.]

But there is a further and still more cogent reason for denying the relief prayed for. Respondent has not been diligent in seeking relief, and, in this case, is barred therefrom by his own unexplained and, therefore, unexcused laches. The doctrine of laches is akin to and overlaps the doctrine of estoppel. A complete and intriguing discussion of this doctrine, and of its application, may be found in Troll, Admr., v. City of St. Louis, 257 Mo. 626, l. c. 660, a case written by Judge LAMM in his usual charming style. Where a party knows the facts and sits idly by for years, in this case for more than seven years, and in the meantime the condition of the parties or the property changes, he will be denied the relief that he might have been entitled to had he acted promptly. [Landrum v. Union Bank of Missouri, 63 Mo. 48, l. c. 56; 21 C. J., Sec. 246; 21 C. J., Secs. 211, 212; Snow v. Funck, 41 S. W. (2d) (Mo. Sup.) 2, l. c. 5.] Here the value of the land in 1925 was shown to be sufficient to have discharged both debts; in 1932, when suit was brought, it was barely

sufficient to pay Johnson's claim. It would be unconscionable to permit him to appear to abandon his rights, if any he had, at a time when appellant could have protected himself, and then invoke the aid of equity to assert them seven years later when Johnson must lose his whole debt. [Klebba v. Struempf, 23 S. W. (2d), (K. C. Court of Appeals), 205, l. c. 207; Lemoine v. Dunklin County, 51 Fed. Rep. 487, l. c. 492.] A case from a sister State that is almost on all fours with the instant case is that of St. Albans Trust Co. v. Farrar, 53 Vt. 542.

The suit is not brought until after the death of one of the parties, which fact closes the lips of the other parties to the suit. [McKee v. Downing, 224 Mo. 115, l. c. 144.] This circumstance, unexplained, gives rise to the presumption "that the purpose of the delay in the assertion of the claim was to take advantage of evidence on one side no longer capable of explanation on the other, and that the deceased participants or witnesses would, if living, testify unfavorably to plaintiff." [21 C. J., 237, Sec. 229; See also Burdett v. May, 100 Mo. 13, l. c. 18.]

The intervention of changed values of the land and the death of one of the parties which automatically closes the lips of the other parties creates a condition to which the doctrine of laches will apply when a claimant seeks equitable relief seven years after his cause of action arose and he offers no explanation of his silence during the intervening time, although he was at all times cognizant of all facts in the case and there is no hint of fraud, concealment or deceit. Judgment is reversed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. Judgment of the Circuit Court is reversed. All concur.