STATE OF MISSOURI at the relation and to the use of PETER C. BREIT, Executor of the Estate of JOSEPH BIELMAN, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and ROBERT M. REYNOLDS, Judges of the Kansas City Court of Appeals.—119 S. W. (2d) 758.

Court en Banc, September 6, 1938*

---

*NOTE: Opinion filed at the May Term, 1938, August 8, 1938; motion for rehearing filed; motion overruled at September Term, September 6, 1938.

(1148)

*Lloyd W. Booher* for relator.

*Charles F. Johnson* and *Robt. E. Rooney,* for respondents.

ELLISON, J.—Certiorari to the judges of the Kansas City Court of Appeals bringing up the record of that court in Breit v. Bowland, 100 S. W. (2d) 599. The case was tried in the Andrew County Circuit Court and appealed to this court. We transferred it to the Kansas City Court of Appeals for want of jurisdiction, 92 S. W. (2d) 110. The trial court decreed for plaintiff; the respondent judges reversed that decree. Relator contends this ruling contravenes the decisions of this court in two respects. The governing facts will be found in the report of the case first cited above. We shall attempt to condense them here.

The suit below was in equity, seeking a decree declaring a deed of trust executed by M. T. Bowland, to Joseph Bielman, deceased, on March 23, 1925, and recorded the same day, a senior and prior lien to one executed by Bowland to W. Z. Johnson over three years earlier on December 13, 1921, and duly recorded, covering the same land. The Bielman deed of trust in suit secured the payment of $4200 and was in renewal of still another deed of trust on the land,

securing the same debt, executed by Bowland to Bielman over five years before on December 31, 1919, and duly recorded. The Johnson deed of trust was *expressed to be subject to* this original Bielman deed of trust.

When Bowland renewed the latter in 1925, instead of taking a mere extension agreement and permitting the old 1919 deed of trust to stand as a prior lien on the record, Bielman released it and accepted and recorded the 1925 deed of trust here in suit, thus letting in the intervening Johnson deed of trust as a prior recorded lien in point of time—though, as we have said, it was expressed to be subject to the original deed of trust. However, Bielman knew of the existence of the Johnson deed of trust when he renewed the loan, and Johnson perpetrated no fraud of any sort upon him. He took no steps to establish his new 1925 deed of trust as an encumbrance senior to the Johnson deed of trust and the matter ran along for over seven years until the suit below was brought in 1932 by his executor, he having died in the meantime. During that interval also Johnson had foreclosed his second (if it was that) deed of trust.

There was evidence that in December, 1925, some nine months after the new Bielman deed of trust was executed and recorded, Johnson tried to sell his note and deed of trust to Bielman. There was also evidence that sometime after Bielman had released his old deed of trust Johnson claimed to Bielman's executor, the relator, that his second deed of trust had thereby become a lien ahead of the new deed of trust. In other words there is evidence that Johnson not only had constructive but actual notice of the existence of Bielman's original and renewed loans. Johnson's loan was for $1500; Bielman's, as stated, was for $4200, making both encumbrances total $5700. Back in 1921 when Johnson took his deed of trust the land covered by the two was worth over $8000. It was worth more than both loans in 1925 when Bielman took his new deed of trust. But when the suit below was brought in 1922 the land had depreciated to a value of about $2100, so that Johnson will lose his entire security if his deed of trust be declared the junior lien.

The respondent judges of the Kansas City Court of Appeals held that since Bielman released his original, first deed of trust with full knowledge of the existence of Johnson's second deed of trust, thereby admitting the latter to priority on the face of the record, his mistake was one of law and not of fact. This being so, says respondents' opinion, he was not entitled to relief in equity, because equity affords no relief for pure mistakes of law, citing Norton v. Highleyman, 88 Mo. 621, 1. c. 624. The relator assigns this holding contravenes Scott v. Hill, 330 Mo. 490, 50 S. W. (2d) 110, and Young v. Evans-Snyder-Buel Comm. Co., 158 Mo. 395, 59 S. W. 113. We can see no escape from the conclusion that respondents' opinion is in conflict with both decisions.

In the Scott case the holder of a first mortgage on real estate accepted a conveyance of the land in satisfaction of the mortgage debt, and released his first mortgage. There was at the time a second mortgage on the land of which he was fraudulently kept in ignorance by the mortgagor-vendor. There is nothing in the opinion disclosing whether the second mortgage expressly recited it was subject to the first, but it does appear that the junior encumbrancer was not a party to the fraudulent transaction. When the grantee learned of it he brought suit to reestablish the lien of his first mortgage as against the second. The decision gives a prominent place to the fraud in its discussion of the case, but without again referring thereto announces this conclusion:

"The intent with which the release was made and not the making of the release is the thing which governs, and that intent should be determined by the interest of . . . the holder of the first deed of trust. We say this because . . . the holder of the second deed of trust did not acquire such deed of trust, or part with anything of value, or change his position in any manner whatsoever relying upon the fact that the first deed of trust had been released. The first deed of trust appeared of record at the time (the junior encumbrancer) acquired the second. He knew at the time he took the second deed of trust that his security was the equity in the land over and above the first deed of trust. He cannot be harmed by the restoration of the lien of the first deed of trust. In event of such restoration he would then have exactly the same security he had at the time he acquired his second deed of trust. Equity will not permit him to reap where he has not sown. If he had been harmed by the release, or if some third party, relying upon the release, had acted to his prejudice, a different question would be presented. The weight of authority is in line with this conclusion."

This language seems broad enough to lay down a rule independent of any fraud, as to the rights of the senior encumbrancer when he does not *intend* to surrender his lien. But the decision is especially in point on another proposition. It will be remembered that in the instant case Johnson, the holder of the second deed of trust, was not a party to the transaction which led to Bielman's releasing his first deed of trust, yet, nevertheless, the respondents' opinion declares equity will not relieve against a pure mistake of law. On that question the Scott case said this:

"Two further contentions are made, (1) that respondent released the first deed of trust believing that his acquisition of title extinguished the lien of the second deed of trust, a mistake of law from which equity will not grant relief, (2) the mistake being made by respondent alone, it was not a mutual mistake and for that reason equity will not grant relief. The rules contended for properly apply to a case where parties are dealing with each other, but they have no application to the facts of this case. Here, . . . the

holder of the second deed of trust, was not a party to the transaction. He was not induced to act and took no action of any kind because of a mistake of either law or fact made by respondent. Not being a party to the transaction, the inducing cause of the making of the release is no concern of his unless he was injured thereby. In event of the restoration of the lien of the first deed of trust he would be in exactly the same position he was before the release was made. For that reason he has no claim which a court of equity should recognize.''

In the Young case the contest for priority was between a duly recorded third chattel mortgage and two earlier unrecorded chattel mortgages, all on the same cattle. However, the third chattel mortgage was expressly made subject to the lien of the other two, which were at least valid as between the parties thereto, though unrecorded. On these facts this court said: " 'One who takes a conveyance absolute or conditional which recites that it is second or subordinate to some other lien or incumbrance, can in no proper sense claim that he is a purchaser of the entire thing. He purchases only the surplus or residuum after satisfying the other incumbrance;' and 'a mortgage expressly providing that it shall be subject to a prior mortgage is subject to it independently of the fact that the prior mortgage is not of record; nor will it alter matters to record the subsequent mortgage first.' " Note the quotation says the junior lien in such circumstances is not advanced in priority even though the older mortgage is *not recorded at all*. The decision is followed and the first part of the doctrine above quoted is applied to encumbrances on real estate in Landau v. Cottrill, 159 Mo. 308, 318, 60 S. W. 64, 66.

It is true the original Bielman deed of trust here involved was released in March, 1925, and that relator is not seeking in the suit below to reinstate the lien of that deed of trust. The object of the suit is to establish priority of the lien of the subsequent, renewal deed of trust. But Johnson had foreclosed his second deed of trust before the suit was filed, and presumably had bought in the land at the foreclosure sale. That is to be inferred from the fact that he was the appellant in respondents' court. So the effect of the suit, if successful, would be to subject the land to the lien of the present Bielman deed of trust. The debt secured is the same as in the original deed of trust, a little less in fact, and Bielman was not a volunteer when he took it. [Berry v. Stigall, 253 Mo. 690, 697, 162 S. W. 126, 127, 50 L. R. A. (N. S.) 489, Ann. Cas. 1915C, 118; Baker v. Farmer's Bank of Conway, 220 Mo. App. 85, 94, 279 S. W. 428, 431.] Whether the facts created a species of equitable right of subrogation in Bielman and his executor, the relator, is a point not discussed in respondents' opinion, and therefore we cannot consider it here. Respondents held only, on this branch of the case, that Bielman's mistake was purely one of law, for which equity will not

grant him relief; and we are clearly of the view that that holding contravenes the Scott and Young cases, supra.

Respondents' opinion further held the decree for relator in the trial court should be reversed because he and Bielman were guilty of laches in waiting for seven years to bring the suit here involved. This is put on the ground that during that period the situation of the parties had changed to Johnson's detriment because of the shrinkage in the value of the land and because the death of Bielman closed the lips of the other parties to the suit under Section 1723, Revised Statutes 1929 (Mo. Stat. Ann., p. 3994), which provides in substance that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party to such contract, or one claiming under him, shall not be admitted to testify. Relator contends this ruling contravenes decisions of this court holding that where a party (in this case Johnson) is fully advised of his rights he cannot invoke the doctrine of laches merely because the other party is guilty of delay in bringing his suit. The cases cited are: Spurlock v. Sproule, 72 Mo. 503, 510; Meriwether v. Overly, 228 Mo. 218, 242, 129 S. W. 1, 9; Stanton v. Thompson, 234 Mo. 7, 15, 136 S. W. 698, 701.

We do not understand how the second reason given by respondents can be made applicable to the case—namely, that the adversary parties were forbidden by statute from testifying because of the death of Bielman—for the opinion discloses that Johnson did testify and says nothing about any other witnesses being disqualified or concerning any facts that were suppressed. Neither is there a basis for the application for the doctrine of laches on the other ground assigned—that the value of the land had declined. The opinion states relator testified that sometime after Bielman recorded his renewal deed of trust and released his original deed of trust, Johnson told him (relator) that his second deed of trust would now be a first lien; and that he (relator) replied he did not think so. Appellant and his son denied this. The relator was Bielman's attorney at the time. There was also evidence to the effect that in December, 1925, about eight or nine months after the transaction Johnson tried to sell his note to Bielman. Furthermore his deed of trust itself recited that it was subject to Bielman's deed of trust, and the fact is evident from respondents' opinion, though not expressly stated, that he knew the renewal deed of trust secured the same debt. Indeed, the opinion bases the application of the doctrine of laches on the fact that Bielman "appeared to abandon his rights."

But Johnson, knowing the facts, was as much bound to know the law as was Bielman. There is nothing in the opinion indicating that either party perpetrated any fraud or deception upon the other. By its own express terms Johnson knew his deed of trust in fact was only a second lien. He knew that Bielman's attorney, the relator, was so claiming. When he saw that land values were going

down he could have foreclosed. As a matter of fact he did that, but the opinion does not disclose when. The chancellor found the facts generally for the relator. While respondents had the right to override his conclusions of fact they did not do so where there was any conflict in the testimony, but merely stated: "Here the material facts are virtually all evidenced by records introduced, or are undisputed." Under these facts, even if some witnesses were disqualified by the statute, there was nothing they could have said that would have changed the result.

This makes applicable the rule of laches announced in the cases cited by relator. One of these, Meriwether v. Overly, supra, 228 Mo. 1. c. 242, 129 S. W. 1. c. 9, says:

"The basis of laches is delay in bringing suit, but it does not rest wholly on delay; the other party must have been injured by the delay; he must have been without knowledge of the other party's title, and being without such knowledge and relying upon his own apparent right to the property, he made lasting and valuable improvements which he would have been saved the expense of making had the other party taken timely action to assert his equitable right. [Bank v. Kennett, 101 Mo. App. 1. c. 397.] In this case, defendant made no improvements, he had actual notice before he bought, that plaintiff was the owner of the title that had passed by the sheriff's sale under the judgment for special taxes, and in addition he must be held to have known that the tax deed under which he claimed was void on its face."

We conclude the respondents' record should be quashed. It is so ordered. All concur.