**SOUTH SIDE NATIONAL BANK IN ST. LOUIS, Plaintiff–Appellant,**

v.

**WINFIELD FINANCIAL SERVICES CORPORATION, Winfield Investment Company, Inc. and Robert O. Scott, Defendants–Respondents.**

**No. 55665.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 19, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 17, 1990.

Fortis M. Lawder, St. Louis, Peper, Martin, Jensen, Maichel and Hetlage, Michael A. Lawder, Belleville, Ill., and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, for plaintiff-appellant.

Gale Anne Todd, St. Louis, for defendants-respondents.

CRANDALL, Judge.

Plaintiff, South Side National Bank in St. Louis, appeals from a judgment in a court-tried case in favor of defendants, Winfield Financial Services Corporation, Winfield Investment Company, Inc., and Robert O. Scott, in an action to have certain conveyances set aside as fraudulent and void under Section 428.020, RSMo (1986). We reverse and remand with directions.

Our review of a court-tried case is guided by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32.

The evidence in the present action was mainly in the form of admissions, stipulations and records. The evidence established that, at all times pertinent to this litigation, Robert O. Scott (Scott) was the registered agent, president, sole shareholder, and sole director of both Winfield Investment Company, Inc. (Winfield Invest-

ment) and Winfield Financial Services Corporation (Winfield Financial). The registered office and place of business of both Winfield Investment and Winfield Financial was Scott's residence.

In 1985, South Side National Bank in St. Louis (South Side) filed the prior underlying action against Scott and Winfield Investment on their written guaranty of indebtedness due South Side. In that action, a certificate of readiness for trial was filed by South Side on August 15, 1986. On September 2, 1986, the docket was called and South Side announced that it was ready. On September 8, 1986, the trial calendar was sent out which included the setting of the prior action for trial on October 14, 1986. On February 13, 1987, the case was called for trial and all parties announced ready. Before trial, however, Scott and Winfield Investment consented to a joint and several judgment against them in favor of South Side for the sum of $88,874.73 plus costs. The judgment in that prior action remains unsatisfied.

The present action arose as a result of certain transfers of property from Winfield Investment and Scott to Winfield Financial which occurred in September 1986. Winfield Investment transferred 15 vacant lots to Winfield Financial to partially satisfy a pre-existing debt of $145,650.55 to Winfield Financial. Scott was the guarantor of that indebtedness. In addition, Scott individually transferred his residence, known as 12 Chartres, to Winfield Financial. After the transfers Winfield Investment and Scott were left without any assets. Winfield Investment's corporate charter was forfeited November 2, 1987. At trial, Scott claimed his mother-in-law supported him.

The 16 transfers are summarized as follows:

| Parcel No. | Deed Date | Date Recorded | Parcel Transferred |
|---|---|---|---|
| 1 | 09–12–86 | 09–22–86 | Lot 1, Cathy Koviak |
| 2 | 09–02–86 | 09–18–86 | Lot 3, Cathy Koviak |
| 3 | 09–02–86 | 09–18–86 | Lot 4, Cathy Koviak |
| 4 | 09–02–86 | 09–18–86 | Lot 8, Patio Cove I |
| 5 | 09–02–86 | 09–18–86 | Lot 9, Patio Cove III |
| 6 | 09–02–86 | 09–18–86 | Lot 14, Patio Cove III |
| 7 | 09–02–86 | 09–18–86 | Lot 15, Patio Cove III |
| 8 | 09–02–86 | 09–18–86 | Lot 41, Patio Cove III |
| 9 | 09–02–86 | 09–18–86 | Lot 11, Lake St. Louis Place |
| 10 | 09–02–86 | 09–18–86 | Lot 12, Lake St. Louis Place |
| 11 | 09–02–86 | 09–18–86 | Lot 29, Patio Green |
| 12 | 09–02–86 | 09–18–86 | Lot 4, Oak Hill |
| 13 | 09–02–86 | 09–18–86 | Lot 89, Oak Hill |
| 14 | 09–02–86 | 09–18–86 | Lot 11, Wildwood, # 5 |
| 15 | 09–02–86 | 09–18–86 | Lot 15, Wildwood, # 5 |
| 16 | 09–12–86 | 09–22–86 | Lot 60 of Woodland (also described as 12 Chartres) |

The trial court found that the combined fair market value of the parcels of real estate at the time of their transfers to Winfield Financial was $553,250. The properties were transferred subject to encumbrances totalling $485,750, which Winfield Financial assumed. South Side brought the present action to have the conveyances set aside as fraudulent.

■ Prefatorily, we address South Side's contention that the findings of fact and conclusions of law entered by the trial court erroneously ignored certain facts and failed to make findings on certain factual issues. South Side argues that, as a result, it is "difficult to determine what theory or defense the trial court relied on in entering its Judgment for [Scott, Winfield Investment, and Winfield Financial]...." At the close of the evidence, South Side orally requested findings of fact and conclusions of law.

Rule 73.01(a)(2) provides in pertinent part:

If any party so requests before final submission of the case, the court shall dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or *if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel.* (emphasis added).

In the present action, it was not necessary for the trial court to state every ground for its decision because neither counsel requested that certain specific issues be resolved. We therefore consider all fact issues not specifically addressed by the trial court as having been found in accordance with the result reached. Rule 73.01(a)(2).

■ Another preliminary issue, which is raised in South Side's first point on appeal, is whether a clear and convincing standard of proof is required to establish that the conveyances in question were fraudulent. South Side argues that the clear and convincing standard relates only to common law fraud and not to actions based upon Section 428.020. South Side cites no authority for its proposition.

Section 428.020 provides in pertinent part: "Every conveyance ... made or contrived with the intent to hinder, delay or defraud creditors ... shall be from henceforth deemed and taken ... to be clearly and utterly void." Case law has established that fraud is not presumed and its inference can be drawn only if the evidence rises above mere suspicion and points logically and convincingly to fraud. Such a finding must rest on more than suspicion, surmise and speculation. *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 941 (Mo.App.1984). A party seeking to have a transaction declared void as fraudulent must therefore prove its case by clear and convincing evidence. *Farmers & Merchants Bank of Festus v. Funk*, 92 S.W.2d 587, 589 (Mo.1936). To meet this burden of proof, substantial evidence, that is, evidence which, if true, has probative force upon the issues, must be adduced to make

a submissible case. In the *Interest of J.A.J.*, 652 S.W.2d 745, 748 (Mo.App.1983). It is then for the trier of fact to decide whether the evidence is credible, even in view of contrary evidence, and whether the moving party has met its burden. Clear, cogent and convincing evidence is that which instantly tilts the scales in the affirmative when weighed against evidence in opposition, evidence which clearly convinces the fact finder of the truth of the proposition to be proved. *Id.*

Although Section 428.020 does not delineate any requisite standard of proof, it merely codifies existing common law which imposes a clear and convincing standard of proof to prove a fraudulent conveyance. The trial court did not err in requiring a clear and convincing standard of proof in the present action. South Side's first point is denied.

■ In its second point, South Side charges error in the trial court's failure to find that the transfers of the properties evidenced badges of fraud and therefore were fraudulent and in violation of Section 428.020.

■ Because the intent of the transferor is difficult to establish by direct proof, the intent must be determined by the facts and circumstances surrounding the transactions. *Community Fed. Savings & Loan Ass'n v. Boyer*, 710 S.W.2d 332, 334 (Mo. App.1986). As a result, courts have recognized the following "badges of fraud": (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Id.* In addition to these enumerated badges of fraud, another recognized badge of fraud is a transfer by a debtor corporation of its property to a second corporation where both are controlled by the same person. *Standard Leasing Corp. v. Missouri Rock Co.*, 693

S.W.2d 232, 236 (Mo.App.1985). Although none of the badges of fraud existing alone establishes fraud, a concurrence of several of the badges raises a presumption of fraud. *Cohoon v. Cohoon*, 627 S.W.2d 304, 307 (Mo.App.1981).

An examination of the facts in the present case indicates the presence of several indicia of fraud. First, the corporations were controlled by the same person. The legal fiction of the independent existence of the corporate entity will be disregarded where two corporations are being manipulated through their interrelationship to cause illegality, fraud or injustice. *Terre Du Lac Ass'n v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 218 (Mo.App.1987). The test for piercing the corporate veil is therefore two-pronged: first, the corporation must be controlled and influenced by persons or by another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud. *Id.* Here, Scott was the sole shareholder, president and director of both corporations. The place of business for both corporations was Scott's residence. The transfers in question were equivalent to Scott's juggling the properties from himself to a corporation and from one corporation to another corporation merely to avoid obligations to a third party. In actuality, Scott was the alter ego of the corporations and the corporations were a subterfuge. Because Scott was the alter ego of the two corporations, he was effectively transferring the properties in question to himself.

Second, the transfers of the properties were made in anticipation of suit or execution. The institution of the underlying action against Scott and Winfield Investment predated all of the transfers of property. Scott was cognizant that he owed the money to South Side. In the prior action, South Side filed its readiness certificate on August 15, 1986. On September 2, 1986, the docket was called and South Side announced that it was ready. That same date, Winfield Investment conveyed 14 of the 16 properties. On September 8, 1986, the trial calendar was sent out indicating that the prior case was set for trial on October 14, 1986. The last transfer from Winfield Investment as well as Scott's transfer of his residence occurred on September 12, 1986, after the trial date had been set. All of the properties were transferred before the parties entered into the consent judgment in February 1987.

Third, another badge of fraud is the transfer of all the debtor's property. All of Scott's property and all of Winfield Investment's property was transferred to Winfield Financial. As a result, neither Scott nor Winfield Investment possessed any property of monetary value at the time judgment was rendered in the prior action.

Another badge of fraud is retention of possession by the debtor. Here, after the transfers, Scott continued to reside at his home and continued to retain control over all of the properties, just as he had done before the properties were conveyed to Winfield Financial. The only differences in the properties which existed after the transfers were the names in which the parcels were titled. There were no other evident differences.

A fifth badge of fraud is the resultant insolvency of the debtor. Scott admitted that he had no property after the transfers and relied on his mother-in-law for support. After the transfers, Winfield Investment also did not possess any property. Winfield Investment ultimately forfeited its corporate charter in November 1987.

Finally, the failure to produce rebutting evidence when the circumstances surrounding the transfers are suspicious is also considered a badge of fraud. In the present action, Scott conveyed the properties ostensibly to offset a debt owed by Scott and by Winfield Investment to Winfield Financial. As mentioned previously, however, Scott was the alter ego of both corporations and his conveying the properties to repay an indebtedness was tantamount to satisfying a debt to himself. Scott's rationale for the transfers was at least suspicious, if not spurious.

Scott and Winfield Investment also contend that their settlement offer of property

plus $30,000 in cash to South Side prior to the transfers in question disproved any fraud in the subsequent transfers to Winfield Financial. This argument is specious as a matter of fact and law. First, Scott didn't offer all the property which he ultimately transferred, only selected parcels which had little or no equity; and the $30,000 in cash was never produced. Second, the settlement, although not a payment in full, contemplated a complete release which would cancel all of Scott's and Winfield Investment's obligations to South Side. Lastly and most importantly, the rejection of the settlement offer did not give Scott *carte blanche* to commit fraud against South Side. A creditor does not reject an offer of settlement at its peril. Evidence of the settlement offer did not rebut the presumption of fraud which was raised by the occurrence of several badges of fraud.

Based upon the above-mentioned badges of fraud and the lack of a legitimate countervailing justification for the transfers, the trial court erroneously applied the law to the facts in the present action when it failed to find that the conveyances in question were contrived to defraud a creditor.

■ In its third point, South Side asserts that the trial court erred in holding that the conveyances were lawful preferences of Winfield Financial over other creditors by Scott and Winfield Investment.

We acknowledge that a company may prefer some creditors to others by transferring enough property to pay them what the company owes them, even if such preferred creditors are among the directors of the corporation. *Land Red–E–Mixed Concrete Co. v. Cash Whitman, Inc.,* 425 S.W.2d 919, 923 (Mo.1968). Here, however, Scott, Winfield Financial, and Winfield Investment were not separate and distinct legal entities. Scott operated the two corporations in such a fashion as to circumvent paying obligations to creditors. Although Scott was entitled in theory to prefer creditors, he could not in practice prefer himself to other creditors. The trial court erred in holding that the conveyances constituted lawful preferences of Winfield Financial over other creditors.

■ In its fourth point, South Side asserts that the trial court erred in holding that the conveyance of Scott's residence could not be fraudulent because it was subject to the homestead exemption. In the present action, because the net value of Scott's residence exceeded the homestead exemption, the conveyance of the residence was fraudulent as to Scott's creditors. At the time of execution against Scott's residence, however, Scott would be entitled to a set-off based upon his homestead interest. *See* Section 513.475, RSMo (1986).

We therefore find that the conveyances to Winfield Financial are void as fraudulent under Section 428.020. In view of our holding, it is unnecessary to address the remaining points on appeal.

The judgment of the trial court is reversed and remanded with directions to set aside the conveyances as void and to grant such other relief which the court deems necessary and which is not inconsistent with this opinion.

PUDLOWSKI, P.J., and KAROHL, J., concur.