Jack SWALL, d/b/a Jack Swall Auto
Parts, Inc., Respondent,

v.

CUSTOM AUTOMOTIVE
SERVICES, INC.,

and

Rodney Minniear

and

Gene McMahon, Appellants.

No. WD 44788.

Missouri Court of Appeals,
Western District.

April 28, 1992.

Ronald R. Holliger, Boland, McQuain, Block, DeHart & Rosenbloom, Kansas City, for appellants.

John K. Allinder, White, Allinder, Grate & Graham, Independence, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Rodney Minniear and Gene McMahon appeal from judgment imposing personal liability upon them for the corporate debt of Custom Automotive Services, Inc. (CAS). Judgment was entered by stipulation in favor of Jack Swall, d/b/a Jack Swall Auto Parts (Swall), and against CAS in the sum of $22,000. The case proceeded to trial without a jury on respondent Swall's theory that, under the alter ego doctrine, Mr. Minniear and Mr. McMahon were personally liable for the corporate debt owed Swall. Appellants Minniear and McMahon contend that the trial court's judgment in favor of Swall is erroneous because, they claim, insufficient evidence was presented to establish that (I) they controlled CAS, and (II) that CAS's corporate status was used to perpetrate a wrongful act or fraud. The trial court's judgment is affirmed.

The evidence at trial established that Mr. Minniear and Mr. McMahon formed a corporation, CAS, with the help of their accountant, Steve Thurmond. Mr. Minniear was the president of CAS, Mr. McMahon was CAS's vice president, and Mr. Thurmond was the secretary-treasurer. Mr. Thurmond was the sole shareholder. The only compensation that Mr. Thurmond received was for accounting services that he rendered the corporation. Mr. Thurmond was not involved in the day-to-day operation of the corporation, but he was involved in meetings concerning profit and loss issues, sales issues, product lines, and other various corporate activities. Mr. Minniear testified that he and Mr. McMahon were signatories along with Mr. Thurmond on the corporate bank account, that any two of the three signatories was required to make checks on the corporate account, and he and Mr. McMahon controlled what monies were paid out by the corporation.

In May of 1990, CAS entered into a business agreement with Swall, wherein Swall agreed to consign automotive products to CAS, for which Swall was to be reimbursed. Jack Swall informed Mr. Minniear and Mr. McMahon that he was experienc-

ing financial stress and that he needed timely payment of money owed Swall for the sale of consigned goods to continue operating. Swall was to be paid for the goods sold by CAS on the 15th day of the month following the sale. On May 1, 1990, CAS began selling Swall's products. However, the corporation failed to pay Swall the monies received for the sold goods. CAS paid Swall $14,000 of the total amount owed. By August 1, 1990, CAS had not paid Swall for the goods sold in May, June, and July, and owed Swall in excess of $22,000. Consequently, Swall terminated the marketing agreement and recovered the balance of the consigned goods that were in CAS's possession.

Swall subsequently sued CAS for monies owed to Swall for the goods sold by CAS. Swall discovered that Mr. Minniear and Mr. McMahon had stripped the corporation of the funds generated by the sales of the consigned products. Mr. Minniear and Mr. McMahon collected monies generated by the sale of Swall's goods, but they did not pay Swall any of the revenue received from the transactions.

The evidence also established that prior to April 1990, neither Mr. Minniear nor Mr. McMahon drew any salary from CAS because the corporation lacked financial capability to pay them although they worked full time on its behalf. Mr. Minniear and Mr. McMahon began receiving compensation from CAS when they started selling Swall's consigned goods. Money received from the sale of Swall's consigned goods more than doubled CAS's income. Mr. Minniear acknowledged that the CAS was undercapitalized.

After receiving the evidence, the trial court found that Mr. Minniear and Mr. McMahon had full and complete control of CAS, operated the corporation grossly undercapitalized, and in the summer of 1990, stripped the corporation of most of its fiscal assets. The court also found that during June, July, and August of 1990, the period in which CAS sold Swall's consigned

goods, Mr. Minniear and Mr. McMahon received compensation from CAS. Mr. Minniear received $5,523, and Mr. McMahon received $3,028. The court further found that during this period, Mr. Minniear and Mr. McMahon received $35,000 from CAS for business and personal expenses. The parties stipulated that Swall was owed $22,000 for the sale of consigned goods which had not been paid.[1] The court, therefore, entered judgment jointly and severally against CAS and Mr. Minniear and Mr. McMahon in their personal capacities in the sum of $22,000.

■ Appellants challenge the trial court's decision to pierce the corporate veil, thereby holding Mr. Minniear and Mr. McMahon personally liable for CAS's debt to Swall. Courts have utilized a two-pronged test for determining whether the corporate veil should be pierced. *South Side Nat'l Bank in St. Louis v. Winfield Fin. Serv. Corp.*, 783 S.W.2d 140, 144 (Mo. App.1989). To satisfy this two-pronged test, the court must first find that "the corporation must be controlled and influenced by persons or by another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud." *Id.* In the appeal *sub judice*, Mr. Minniear and Mr. McMahon challenge the court's determination that, first, they controlled or influenced CAS to the extent required to satisfy the first of the two pronged test and that, second, the corporation was undercapitalized and its assets stripped by them to the detriment of creditor Swall.

■ In a judge-tried proceeding, the trial court's judgment will be reversed only if there is no substantial evidence to support the judgment, if the decision is against the weight of the evidence, or if the judgment erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When determining whether the evidence is sufficient to support the judgment, appellate courts review

1. Prior to trial, CAS stipulated to judgment against itself in the amount of $22,000 on Count II of Swall's petition for damages.

the evidence and all reasonable inferences from such evidence in the light most favorable to the trial court's judgment. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Any evidence contrary to the decision is disregarded. *Id.* Finally, the trial court is vested with the discretion to believe or disbelieve all, part, or none of any witness' testimony. *Id.*

## I

■ Mr. Minniear and Mr. McMahon contend, as their first point on appeal, that the record is devoid of substantial evidence proving that they exercised dominion and control over CAS, the first element required in the two-pronged test to pierce the corporate veil and assess individual liability. *South Side Nat'l Bank in St. Louis*, 783 S.W.2d at 144. Appellants argue that, to satisfy the test, the dominion and control exercised by the dominating individual must make the person indistinguishable from the dominated corporation. *Collet v. American Nat. Stores, Inc.*, 708 S.W.2d 273, 283–84 (Mo.App.1986). Appellants maintain that their receiving salaries for services performed, reimbursement by the corporation for corporate expenses advanced, determining what corporate obligations to pay, and running the corporation on a day-to-day basis was not proof that they improperly dominated the corporation. If this evidence was sufficient, appellants contend, any officer of any corporation would be in "control" and potentially personally liable for corporate obligations.

Appellants' argument ignores substantial evidence. Appellants incorporated CAS. The sole shareholder since the corporation's inception was CAS's accountant, Steve Thurmond. Mr. Minniear and Mr. McMahon held the offices of president and vice president, made all the decisions concerning the operation of the corporation, and controlled the monies paid out by the corporation. The corporation maintained no minutes.[2] Apparently they were to receive compensation for their services as they determined appropriate, having no

agreed salary and receiving none until after Swall's consigned goods commenced selling. Appellants authorized disbursement of funds, determined which contracts the corporation executed, and determined which creditors were paid. The corporate account required two signatures to make a check. The sole stockholder and the appellants were the three persons authorized to sign corporate checks. Thus, at least one of the appellants was required to sign CAS's checks, ensuring that the appellants controlled CAS's account. The appellants withdrew from the corporation's account amounts of money they deemed appropriate for themselves after Swall's consigned goods began selling. Although some of the unfettered authority manifested by appellants is routinely exercised by corporation presidents and vice-presidents, much of the authority exercised by appellants is not routinely exercised by corporate officers without supervision. The evidence supports the trial court's finding that appellants exercised the control and domination of CAS necessary to satisfy the first part of the two-prong test to pierce the corporate veil. Therefore, the trial court's finding that Mr. Minniear and Mr. McMahon dominated and controlled CAS to the extent required by *South Side Nat'l Bank in St. Louis* is supported by substantial evidence. Appellants' point I is denied.

## II

■ To satisfy the second prong of the test for determining whether the corporate status should be pierced, evidence must establish "that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud." *South Side Nat'l Bank*, 783 S.W.2d at 144. "Examples of such wrongs as would satisfy … [the second prong of the test] include actual torts, violations of statutory duties, *undercapitalization*, or the *stripping of assets* from the subservient corporation." *Collet*, 708 S.W.2d at 287 (emphasis added). Thus, "[c]ourts will disregard the existence of a

---

**2.** Trial and deposition testimony conflicted on whether the corporation maintained minutes

that reflect the president's and vice-president's salaries.

corporate entity when it is operated while undercapitalized." *Grote Meat Co. v. Goldenberg,* 735 S.W.2d 379, 387 (Mo.App. 1987). Operating a corporation "without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the rights of others." *Collet,* 708 S.W.2d at 287. (Citations omitted).

■ Appellants argue as point II that the record lacks competent and substantial evidence supporting the trial court's finding that CAS was undercapitalized. Appellants contend the absence of evidence of the dollar value of CAS's capital account or what working capital CAS had at any point in time is fatal to Swall's claim. Appellants further point to the absence of balance sheets, tax returns, or business journals in the record which establish the CAS's capital. However, the evidence disclosed that the corporate officers did not receive salaries before Swall's consigned goods were sold by CAS, although the officers worked for the corporation full time several months before being paid for the first time. The appellants loaned money to the corporation to enable the corporation to do business. The evidence indicates that CAS did not have sufficient capital to pay its creditors or appellants prior to April 1990 when the corporation received income from the sale of Swall's consigned products. Additionally, Mr. Minniear admitted that the corporation was undercapitalized. The evidence supports the trial court's finding that the corporation was undercapitalized.

■ The record also contains substantial evidence supporting the trial court's finding that the appellants stripped CAS's assets in reckless disregard of Swall's legal rights. The contract between Swall and CAS provided that Swall would be paid each month for goods consigned to CAS and sold by the corporation. CAS received sufficient funds from the sale of goods consigned by respondent to pay Swall for the goods sold. However, appellants determined not to pay Swall the full amount owed and instead withdrew the funds in the form of salaries, expenses, unsubstantiated expenses, child care expenses, compa-

ny retreats, payment of personal expenses, and entertainment. Mr. Minniear received compensation from CAS in the form of salary totaling $5,023, and Mr. McMahon received $3,028 as salary. Appellants also received $35,000 for purported business and personal expenses. This compensation was paid from CAS to appellants during the relatively brief time the agreement with Swall was in effect. Although appellants, in theory, as president and vice-President of CAS could prefer which creditors to pay first, their decision to pay themselves and not pay creditor Swall, in breach of CAS's contractual agreement, is evidence the trial court could consider when determining whether appellants stripped CAS's financial assets. *See South Side National Bank in St. Louis,* 783 S.W.2d at 145. Therefore, substantial evidence that CAS was undercapitalized and that appellants improperly stripped CAS's tangible assets, thereby depriving Swall of monies owed respondent, was presented. Appellants' point II is denied.

The trial court's judgment is not against the weight of the evidence and the court neither misstated nor misapplied the law. *Murphy v. Carron,* 536 S.W.2d at 32. The trial court's judgment is affirmed.

All concur.