**SOUTH SIDE NATIONAL BANK, Plaintiff/Appellant,**

v.

**COMMERCE BANK OF ST. LOUIS, N.A., Defendant/Respondent.**

**No. 66646.**

Missouri Court of Appeals, Eastern District, Division Two.

May 9, 1995.

Michael A. Lawder, David T. Butsch, Hinshaw & Culbertson, St. Louis, for appellant.

Helmut Starr, Suelthaus & Walsh, P.C., St. Louis, for respondent.

PUDLOWSKI, Judge.

This is an appeal from a judge tried case concerning the priority of two lienholders over a parcel of real property. The trial court held that advances made by Commerce Bank of St. Louis, N.A. (Commerce) were covered by Commerce's previous recording of a deed with a future advance clause, and that this gave Commerce priority over a judgment lien which South Side National Bank in St. Louis (South Side) obtained in the interim. We affirm.

In 1985 debtor Scott obtained a loan from Commerce. It was secured by a deed of trust on a certain parcel of property which Scott owned in Lake St. Louis. The pertinent part of the deed, recorded on July 12, 1985, reads as follows:

> This Deed of Trust secures future advances made pursuant to said note and also secures all other future obligations of Grantor to Lender which are contractual in nature. The total amount of the obligations which may be secured hereby is $50,000, provided such advances or obligations are incurred within ten years from the date hereof. This Deed of Trust is governed by Section 443.055 R.S.Mo.

A deed dated September 12, 1986, and recorded on September 22, 1986, transferred ownership of the property to his corporation, Winfield Financial Services, Inc. (Winfield). We held this transfer void in *South Side Nat.*

*Bank v. Winfield Fin. Serv.*, 783 S.W.2d 140 (Mo.App.E.D.1989).

On December 1, 1986, Commerce recorded a second deed to secure an October 15, 1986 loan of $15,000.

On February 13, 1987, South Side obtained a judgment lien against Scott's property.

On January 23, 1989, Scott owed a balance of $17,672.50 on advances made by Commerce pursuant to the 1985 deed of trust. Scott and his wife wished to borrow more money. To accommodate the Scotts, Commerce agreed to increase the Scotts' available line of secured credit. Therefore, Commerce accepted a new note from Scott, dated January 23, 1989, for $50,000, which explicitly stated that it was secured by the 1985 deed of trust. Commerce also cancelled an old note on which Scott owed the $17,672.50. Contemporaneously, Commerce's documentation department prepared a new deed of trust securing future advances up to $75,000. Commerce also prepared, but did not sign, a termination of the future advance clause on the 1985 deed of trust, so as to meet the legal requirement that there not be two future advance clauses on the same property.

On January 24, 1989, $32,327.50 (the difference between $50,000 from the new note and $17,672.50 from the cancelled note) was disbursed at Scott's direction into his account bearing the name Boulder Valley Ranch, Inc.

On January 25, 1989, a Commerce vice president signed, in the presence of a notary, the termination of the future advance clause from the 1985 deed of trust.

On January 27, 1989, the new deed with the $75,000 future advance clause was recorded.

On June 8, 1990, South Side forced an execution sale on Scott's property and purchased it.

On November 5, 1990, South Side tendered an offer to Commerce in the amount of $18,-672.50 in an effort to require Commerce to release its liens on the property. Commerce refused on the basis that the amount tendered was insufficient, and stated that it would foreclose on the property if it did not receive $44,654.55, plus additional interest.

On December 6, 1990, South Side tendered a second offer to Commerce in the amount of $44,733.21, reserving its right to proceed to recover what it considered excessive payment. Commerce accepted and assigned all notes and deeds on the property to South Side.

South Side now brings this action for money had and received in violation of § 443.055 RSMo 1986, governing future advance clauses. Its theory is that it did not need to pay the full amount which Commerce demanded because some of Commerce's advances became junior in priority to South Side's judgment lien when a one or two day gap occurred between the termination of one future advance clause and the making of another. The case was tried before Hon. Richard J. Mehan of the City of St. Louis Circuit Court, who entered a verdict and judgment against South Side.

■ It is undisputed that Commerce held a valid deed of trust against the property for all future advances and obligations, and that this deed was recorded in 1985. South Side subsequently obtained its judgment lien in 1987. Section 443.055.6 RSMo 1986 [1] states:

As to any third party who may acquire any rights in or lien upon the encumbered real property, the priority of the lien securing any such future advances or other future obligations shall date from the time the instrument is filed of record....

Section 443.055.2 RSMo 1986 states:

The total amount of obligations that may be secured by such an instrument may decrease or increase from time to time, but ... the total principal amount of the obligations secured may not exceed the face amount stated in the instrument.

These two provisions make it clear that all advances made pursuant to a deed with a future advance clause relate back to the date of the deed for creditor priority purposes, so long as the balance owing on any given day does not exceed the face amount of the mortgage. Comment, *Future Advances in Missouri*, 49 Mo. L. Rev 103, 115 n. 83 (1984). Therefore, all advances or obligations, not exceeding $50,000 in the aggregate at any

1. Amended and renumbered as § 443.055.5 RSMo 1994.

given time, made by Commerce pursuant to the deed of trust of 1985, date back to 1985, and thus would have priority over South Side's 1987 judgment lien.

■ South Side claims that the $32,327.50 advance of funds, posted January 24, 1989, was not covered by the 1985 agreement's future advance clause because a document dated January 23, 1989 terminated security for all future advances. However, this document was not signed by any officer of Commerce until January 25, 1989, as evidenced by the date of the notarization on the face of the instrument. The termination document was not effective before the 25th, and did not affect the future advance clause of the deed of 1985 before the 25th. Therefore, the 1985 deed covered the $32,327.50 advance made on the 24th.

■ It should be emphasized that there was no request by the debtor to terminate a future advance clause pursuant to § 443.055.7 RSMo 1986.[2] If that were the case, the termination of the future advance clause would have been effective immediately upon notice. Comment, *supra*, 49 Mo. L.Rev. at 116. Although the pre-printed termination document contained a provision indicating that notice was received from the borrower, it is clear from the trial testimony that Commerce initiated the termination of this future advance clause on its own, and never received notice of any kind from Scott. The release of a lien is primarily a question of the holder's intent. *State v. Shain*, 342 Mo. 11 3, 119 S.W.2d 758, 760 (1938). The note securing the $32,327.50, dated January 23, 1989, specifically refers to the 1985 deed. We find from the evidence Commerce, the holder, did not intend to terminate the 1985 deed's future advance clause before making the $32,327.50 advance. We agree with the trial court that Commerce intended to make one final advance of $32,327.50 under the 1985 deed before terminating that future advance clause.

Furthermore, we find that South Side was not harmed or misled in any way by Commerce's handling of the termination document. "Not being a party to the transaction, the inducing cause of the making of the release is no concern of his unless he was injured thereby." *Scott v. Hill*, 330 Mo. 490, 50 S.W.2d 110, 113 (1932). From its inception, South Side's 1987 judgment lien was junior to Commerce's 1985 deed and advances thereunder. South Side has no right to complain about the procedure of a termination agreement to which it was not a party. "If he had been harmed by the release, or if some third party, relying upon the release, had acted to his prejudice, a different question would be presented." *Id.* South Side did not change its position in reliance upon the termination. Therefore, we hold that the 1985 future advance clause was operative and effective up to and through January 25, 1989. South Side's lien remains junior to all advances made before the 25th. Point denied.

In its second point, South Side claims that the judge erred in ruling that the termination document had no effect because of a clerical mistake. Because we concluded in South Side's previous point that the termination document could not be effective until January 25, 1989, the validity of the termination document is irrelevant to the January 24 disbursement, and we need not address that issue.

In its third point, South Side claims that the judge erred in finding there were future obligations and advances created on January 23, 1989, when the account documents unambiguously state that the advances were not made until January 24. Because we concluded that the termination document was not effective until January 25, 1989, it does not matter whether the future advances and obligations were created on the 23rd or 24th. Both would be covered by the 1985 future advance clause. Therefore, any error on the part of the trial court in fixing the date of creation as January 23 instead of January 24 would be harmless.

■ In its fourth point, South Side claims that the judge erred in finding that the December 1, 1986, deed secured the $15,000 which Commerce loaned to Scott on October 15, 1986. South Side asserts that Scott was not the record owner of the property on December 1, 1986, because he had transferred the property to his company, Winfield Financial Services, Inc., on September 12, 1986. We disagree.

2. Amended and renumbered as § 443.055.8 RSMo 1994.

The September 12, 1986, transfer was held void as fraudulent by this court in *South Side Nat. Bank v. Winfield Fin. Serv.*, 783 S.W.2d 140 (Mo.App.E.D.1989). Conveyances made with intent to defraud creditors are void as to those creditors. Section 428.020 RSMo 1986.[3] *South Side Nat.* outlines several badges of fraud recognized by the courts. *Id.* at 143. That opinion found several badges showing Scott's 1986 transfer was an attempt to defraud South Side: (1) Scott controlled Winfield, the transferee entity, (2) Scott made the transfers in anticipation of suit or execution, (3) Scott transferred substantially all of his property, (4) Scott retained possession after the transfer of title, (5) Scott was insolvent after the transfer, and (6) Scott failed to produce rebutting evidence. *Id.* at 144. We find that all of these badges, with the exception of the second badge, which we found to be present in *South Side Nat.*, are relevant to this case. Together with the fact that this transfer was made shortly before Commerce's $15,000 advance to Scott, these badges are sufficient to create the presumption that the transfer was intended to defraud Commerce as well as South Side. Therefore, the trial court did not err in finding that the transfer to Winfield was a nullity and had no effect on the validity of Commerce's 1986 deed.

South Side's fifth and sixth points charge that the judge failed to find that Commerce had wrongfully threatened foreclosure and that Commerce had wrongfully withheld acknowledgement of satisfaction of the liens upon South Side's first tender attempt in November, 1990. These points must fail because, as discussed above, all of Commerce's loans had priority over South Side's. Therefore, Commerce was well within its rights to demand complete satisfaction of all of its liens before releasing them.

Judgment affirmed.

SMITH, P.J., and WHITE, J., concur.